NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEJANDRA D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No.: 22-175 <br><br> **OPINION** |

**CECCHI, District Judge.**

I.    **INTRODUCTION**

Before the Court is the appeal of Alejandra D.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA"). ECF No. 1; *see also* ECF Nos. 10 ("Pl. Br."), 13 ("Pl. Reply"). The Commissioner opposed the appeal. *See* ECF No. 11. This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

II.    **BACKGROUND**

Plaintiff is a 57-year-old female with an associate degree from community college. Tr. at 20, 40, 83 . She lives in New Milford, New Jersey with her husband, two adult daughters, and two grandchildren. *Id.* at 39-40. Before applying for DIB on account of depression, post-traumatic

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; *see also Bryan S. v. Kijakazi*, No. 20-cv-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

1

stress disorder, plantar fasciitis, and a heel spur, she worked as a data entry clerk. *Id.* at 20, 83.

    A.    <u>Physical Treatment</u>

Plaintiff testified that she ceased working in February 2017 due to left foot pain resulting from a heel spur and plantar fasciitis. *Id.* at 41-43. Although Plaintiff had previously tried several plantar fasciitis treatments to some success, including taping, a CAM boot, injections, and a TENS unit, she ultimately underwent surgery on her left heel with Daniel Hennessy, DPM, in April 2017. *Id*. at 306, 309, 311, 317, 319, 321. By June 2017, Plaintiff reported doing much better and rated her pain as a 5/10. *Id.* at 330. Thereafter, Plaintiff was treated with application of a K-laser to affected areas of Plaintiff's left foot and ankle and also received injections in her right foot and left heel, while continuing to attend physical therapy and use air heels . *Id.* at 333-34. In September 2017, Plaintiff reported that her pain was better and she could walk three blocks without any pain. *Id.* at 336.

Plaintiff did not seek any further treatment of her foot until May 2020, when she complained of pain in the bottoms of her feet while walking, and pain in her hips and knees. *Id.* at 362. In the week following her complaint, conservative treatment of taping, air heels, and a TENS unit led to Plaintiff being able to go out walking during the day with only a little bit of pain. *Id.* at 367. By the following week, Plaintiff reported that she was feeling better, and only had pain while walking for a prolonged period of time. *Id.* at 369. Later that month, Plaintiff received treatment with a K-laser, and, by early June 2020, she reported that she was "doing much better" and laser therapy was "definitely" helping. *Id.* at 374. Her appointments in June 2020 noted further improvement, and by the end of the month she reported she was doing better and had been out walking on the beach the prior weekend. *Id.* at 380.

    B.    <u>Mental Health and Psychiatric Treatment</u>

Plaintiff has also received treatment relating to her mental health, specifically depression

and attention deficit disorder. Starting in February 2016, one year prior to her alleged disability onset date, Plaintiff reported that she had difficulty concentrating since she stopped taking Concerta, and that she had a depressed mood. *Id.* at 295. Treatment notes at the time indicated that she was responding well to an antidepressant, Effexor, with no side effects. *Id.* Six months later, Plaintiff reported she was able to concentrate and function at work after restarting Concerta, and her depression and anxiety had improved but she was still occasionally anxious and depressed due to her financial situation. *Id.* at 296. At her next appointment six months later, Plaintiff again noted she had trouble staying focused due to having run out of Concerta. *Id.* at 340. By her April 2017 follow-up, Plaintiff reported she was not depressed, and her mood was stable. *Id.* at 341.

In October 2017, Plaintiff received a psychiatric and mental status evaluation from Paul Schneck, MD. *Id.* at 342. Plaintiff stated that she was depressed and spent a lot of time at home, but was able to cook and clean, enjoyed spending time with her husband, and spent time with friends and relatives. *Id.* Dr. Schneck noted Plaintiff was friendly, fully oriented, neatly groomed and dressed; had no thought process disorder; had adequate judgment and sight; and had no hallucinations or psychoses. *Id.* at 343. Although Plaintiff stated she was often depressed, Dr. Schneck noted that Plaintiff "brighten[ed] up during our interview and is responsive to questions." *Id.* Treatment notes indicate that Plaintiff had anxiety about being able to work and felt worthless because she was not working but felt she would feel better once she found a job. *Id.* In December 2017, Plaintiff reported that she was not depressed, and that Concerta helped her focus and calmed her anxiety, while Effexor resolved her depressive symptoms. *Id.* at 353. Notes also reflect that Plaintiff's anxiety and depression were controlled with medication. *Id.* Plaintiff's March 2018 appointment reflected no changes with respect to depression or concentration. *Id.* at 354 (reporting good response to medication and Plaintiff "loves the meds").

Subsequently, Plaintiff's complaints about low mood, depression, and being overwhelmed

3

with finances and caring for her elderly parents fluctuated, often flaring up when she failed to take her medication and improving upon restarting. *See, e.g., id.* at 357 (November 2018 appointment indicating complaints of low mood, isolation, and being overwhelmed with finances and caring for her elderly parents; presenting as alert, with normal thought processes and no delusions or ideations; referring Plaintiff for group therapy and prescribing Abilify, an antidepressant); *id.* at 358 (March 2019 appointment reporting good focus and attention but low mood; noting Plaintiff began attending group therapy which she enjoyed but had stopped taking her antidepressant; agreeing to restart the medication when she returned from a cruise.); *id.* at 359 (May 2019 appointment reporting Plaintiff was more upbeat and optimistic than before, having restarted her Abilify medication); *id.* at 360 (October 2019 appointment where Plaintiff informed her provider that she had run out of medication and was more tearful without the medication; Plaintiff was amenable to restarting medication after discussion with provider about the importance of medication compliance); *id.* at 361, 385 (Plaintiff's January and March 2020 appointments noted a low mood at times, but also some improvement from her medication; indicated Plaintiff was able to care for her disabled grandson despite her symptoms). In June 2020, at Plaintiff's final mental health status examination before her DIB hearing, Plaintiff reported good mood, energy, sleep, and appetite, and was coping with the pandemic and looking forward to things opening up. *Id.* at 386. Her provider found her to be alert, fully oriented, calm and cooperative, with a euthymic mood, and normal thoughts. *Id.* Plaintiff reported her medications had a good effect on her focus, attention, and mood. *Id.*

    C.    <u>Consultative Examinations and State Agency Medical Expert Findings</u>

In October 2019, Cheryl Sanford, Ph. D., a state agency psychologist, reviewed Plaintiff's record and completed a psychiatric review technique form indicating that Plaintiff had no limitations in understanding, remembering, or applying information and interacting with others,

4

and mild limitations in maintaining concentration, persistence, or pace, and in managing herself. *Id.* at 85. Accordingly, Dr. Sanford found Plaintiff's mental impairments to be non-severe. *Id.* at 86. In February 2020, Leslie Williams, Ph. D., another state agency psychologist, reviewed the record and affirmed Dr. Sanford's findings. *Id.* at 90-92.

On December 3 2019, Plaintiff was examined by consultative orthopedist Dr. Betty Vekhnis, presenting "chief complaints of her inability to work due [to] major depression … [and] complain[ing] of left heel pain on walking." *Id.* at 345. A left foot x-ray revealed only a heel spur. *Id.* at 349. Upon further examination, Dr. Vekhnis found Plaintiff did not use orthotics; could perform a shallow squat; had normal cervical, thoracic, and lumbar spines; had negative straight leg-raises bilaterally; had full range of motion in her hips, knees, and ankles; and did not have swelling, erythema, or deformity in the left foot.

Also in December 2019, state agency physician Arthur Pirone, M.D., reviewed Plaintiff's medical record and determined that her conditions caused only a slight impact on her work-related functioning and thus were non-severe. *Id.* at 84-85. Dr. Pirone opined that Plaintiff could stand, walk, sit, and use her upper extremities without difficulty. Three months later, in February 2020, Lloyd Marks, M.D., another state agency physician, reviewed the record and affirmed Dr. Pirone's findings. *Id.* at 90.

D.   Plaintiff's Testimony and Self-Reports

At the administrative hearing in September 2020, Plaintiff testified that she was unable to work due to left foot pain and depression. *Id.* at 41-43. She explained that she takes medications but still experiences crying spells. *Id.* at 44-45. Plaintiff also testified that, contrary to previous statements made to providers, she gets side effects from her medications including drowsiness, dizziness, and blurry vision. *Id.* at 45-46. She also explained that she usually showered and got dressed during the day, but often took naps and stayed home most of the day. *Id.* at 44. As to her

physical conditions, Plaintiff also testified that she can only walk half a block because of her foot, and her family does all the shopping and household chores. *Id.* at 46-47. She reported that she has trouble reading and watching television and can only sit for a half hour before she has to move. *Id.* at 47-48 Plaintiff stated that she cries less because of therapy and medications. *Id.* at 48.

In a September 2019 function report, Plaintiff indicated that she had no problems with personal care and prepared meals every other day. *Id.* at 212. She reported doing laundry and some housecleaning, and was able to drive and go out alone. *Id*. at 212-13. Plaintiff called her sister every day, attended group therapy on Wednesdays, and indicated she attended events if invited somewhere and did not need reminders. *Id.* at 214. Despite these statements, she stated she did not go outside as she "stay[ed] indoors often and sle[pt] a lot." *Id.* at 213. Plaintiff also responded that although she had no problems with others, she had become a loner. *Id.* at 215. Plaintiff further reported that she followed written instructions well (but not spoken instructions) and did not do well with stress. *Id.* at 215-16.

  **E.**  <u>Procedural History</u>

In August 2019, Plaintiff filed an application for DIB, alleging disability beginning on February 23, 2017. *Id.* at 83, 181. Plaintiff's claim was denied initially and upon reconsideration. *Id.* at 97, 102. Plaintiff, who was represented by counsel, and an impartial vocational expert (VE) testified at a hearing on September 15, 2020. *Id.* at 27-61. After the hearing, the ALJ obtained additional evidence and, on March 25, 2021, convened a second hearing at which Plaintiff, and a different VE testified. *Id.* at 62-81. On March 26, 2021, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 9-27. On November 15, 2021, the Social Security Administration's Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision the Commissioner's final decision. *Id.* at 1-6. This appeal followed.

**III.**  <u>**LEGAL STANDARD**</u>

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in her previous work or any other form

7

of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

### C.  Sequential Evaluation Process For A Continuing Disability

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit her ability to work. *Id.* Third, if she has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the

claimant's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Id.* at 555.

## IV. DISCUSSION

### A. Summary of the ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 23, 2017, the alleged onset date. Tr. at 14. At step two, the ALJ found Plaintiff had the following severe impairments: "left plantar fasciitis s/p left fasciotomy and gastric resection, right foot osteoarthritis, obesity, and major depressive disorder." *Id*. At this step, the ALJ noted that these impairments were severe because they caused more than a minimal limitation in the claimant's ability to perform basic work activities. *Id.* at 15. At step three, the ALJ determined that Plaintiff's conditions did not meet or medically equal any of the listed impairments in the Listings. *Id.* at 15-16. Because the ALJ found that Plaintiff's impairments did not equal an impairment enumerated in the Listings, the ALJ then formulated Plaintiff's RFC. *Id.* at 16-20. Based on all the evidence in the record, the ALJ found that Plaintiff could "perform a reduced range of light work that required no more than four hours of standing or walking in an eight-hour day; no operation of foot controls; no more than occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; only occasional balancing, stooping, kneeling, crouching, and crawling; no exposure to unprotected heights, moving mechanical parts, or

9

operation of a motor vehicle; and was limited to jobs that were not performed at a production rate or pace." *Id.* at 16.

At step four, the ALJ relied on the VE's testimony to determine that, given Plaintiff's vocational characteristics and RFC, she could perform her past work as a data entry clerk. *Id.* at 20. Accordingly, the ALJ found Plaintiff was not disabled during the relevant period. *Id.* at 21.

  **B.**  **Plaintiff's Arguments on Appeal**

In the instant appeal, Plaintiff asserts that the ALJ committed four errors. First, Plaintiff argues that the ALJ erred by finding that she had only mild mental limitations in understanding, remembering, or applying information. Pl. Br. at 21-26. Second, Plaintiff contends that the ALJ failed to conduct a proper credibility analysis when analyzing her subjective testimony. *Id.* at 26-32. Third, Plaintiff asserts that the record was devoid of any opinion on Plaintiff's mental functional limitations and thus the ALJ's decision not to order a consultative psychological examination was in error. *Id.* at 32-34. Fourth, Plaintiff argues that the ALJ did not sufficiently consider her obesity when formulating her RFC. *Id.* at 34-37.

    **1.**  **The ALJ's Assessment of Plaintiff's Mental Limitations**

When assessing a claimant's mental health impairments, the SSA requires the ALJ to rate the claimant's degree of limitation in four broad functional areas, including, as relevant here, "understand[ing], remember[ing], or apply[ing] information." 20 C.F.R. § 404.1520a(c)(4); 20 C.F.R. § 404.1520a(d). Plaintiff argues that the ALJ's assessment of mild limitations with respect to Plaintiff's ability to understand, remember, and apply information "is unsupported by substantial evidence." Pl. Br. at 21. Specifically, Plaintiff contends that the ALJ failed to "consider the longitudinal picture" of her mental impairments and thus erroneously based his conclusion on "mere snapshots of Plaintiff's mental function on only a few occasions." *Id.* at 21, 22.

Here, the Court finds that the ALJ adequately considered the entirety of Plaintiff's mental

10

health treatment, which provided substantial evidence for the ALJ's finding of mild limitations in "understand[ing], remember[ing], or apply[ing] information." 20 C.F.R. § 404.1520a(c)(4). Rather than rely on "mere snapshots" in formulating the RFC, as Plaintiff contends, Pl. Br. at 22, the ALJ considered Plaintiff's mental status examinations, treatment records and self-reports from the entirety of Plaintiff's mental health history. *Id.* at 18-19. This included express discussion of Plaintiff's April 2017, October 2017, December 2017, May 2018, November 2018, March 2019, May 2019, October 2019, March 2020, and June 2020 mental health appointments. *Id*. In considering this extensive history, the ALJ took into account Plaintiff's reports of low mood at times, yet also recognized consistent documentation that Plaintiff was fully oriented with intact thought process and good memory and cognition when Plaintiff took her medication. *Id.* The ALJ also found that Plaintiff's subjective reports of being overwhelmed could affect her ability to understand, remember and apply information, *id.* at 15, but reasonably weighed this testimony against the rest of the evidence (which included, *inter alia*, intact cognitive skills; responding well to conservative treatment; the ability to drive, prepare meals, help a friend with business paperwork, perform some household chores, socialize with family and friends, and care for her parents and grandson). *Id.* at 15, 17-19. Additionally, none of Plaintiff's treating mental providers opined that she had any mental functional limitations surpassing the ALJ's determination of mild limitations. And both state agency expert psychologists who offered opinions about Plaintiff's mental functioning found no limitations in understanding, remembering, or applying information. *Id.* at 19; *see id.* at 85, 90-92; *cf. Chandler,* 667 F.3d at 361 (noting the ALJ, "not treating or examining physicians or State agency consultants," is the final arbiter of disability and RFC determinations). Given the record upon which the ALJ carefully relied, crediting Plaintiff's argument that the ALJ should have reached a different conclusion on her mental limitations would require the Court to "reweigh the evidence," a task which it may not do. *G.B. v. Comm'r of Soc.*

11

*Sec.*, 2021 WL 6062257, at *2 (D.N.J. Dec. 22, 2021); *see Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Cruz*, 244 F. App'x at 479 ("The ALJ's decision may not be set aside merely because we would have reached a different decision.") (citation omitted)). Accordingly, the ALJ's determination of mild limitations in the areas of understanding, remembering, or applying information was supported by substantial information.

### 2.    The ALJ's Assessment of Plaintiff's Subjective Complaints

Next, Plaintiff contends that the ALJ's credibility analysis of Plaintiff was not supported by substantial evidence. Pl. Br. at 26-32. Plaintiff principally argues that the ALJ erred by failing to consider "other evidence" beyond objective medical evidence and by failing to discuss "all of SSA's listed credibility factors" found in 20 C.F.R. § 404.1529(c). *Id.* at 26-27.

The SSA assigns to the Commissioner the function of appraising the credibility of witnesses, and accordingly, the ALJ, as the fact finder, has the sole responsibility to weigh a claimant's complaints about her symptoms against the record as a whole. *See Zirnsak v. Colvin*, 777 F.3d 607 (3d Cir. 2014) (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009)); 20 C.F.R. § 404.1529(a). The corresponding regulation, 20 C.F.R. § 404.1529, outlines a two-step process here: first, the ALJ considers whether the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged; and second, if such an impairment is established, the ALJ evaluates the intensity and persistence of the symptoms to determine the extent to which those symptoms limit the claimant's ability to work. *Id.* § 404.1529(c); *see also* S.S.R. 16-3p. In making a determination at step two, if the objective medical evidence on its own does not lead to a favorable decision for the claimant the ALJ must consider other evidence—including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in [the] regulations." S.S.R. 16-3p.

Plaintiff's argument here does not establish a lack of substantial evidence as to the ALJ's credibility determination. As an initial matter, Plaintiff acknowledges that the ALJ went through the required two-step process. *See* Pl. Br. at 27 (noting the ALJ determined Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms; however [her] statements concerning intensity, persistence, and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record") (quoting Tr. at 17). Nonetheless, she contends that the two-step process is supported by substantial evidence "*only after* consideration of *all* of SSA's listed credibility factors." Pl. Br. at 27 (emphasis added). Yet while the ALJ must provide "specific reasons" for his findings, he need not set out an exhaustive discussion of every potential factor listed in the regulations. S.S.R. 16-3p; *see Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (holding that the ALJ is required to adequately explain his reasons for rejecting and discounting the evidence). Indeed, the controlling guidance document cautions that "not all of the types of evidence described below will be available or relevant in every case." S.S.R. 16-3p (referring to § 404.1259(c) factors).

Applying these principles, the ALJ properly evaluated Plaintiff's subjective complaints in the context of the medical evidence as well as the other evidence available, and sufficiently set out his reasons for finding Plaintiff's allegations about the severity and limiting effects of her symptoms to be inconsistent with the record. The ALJ specifically discussed Plaintiff's testimony and subjective complaints, her activities of daily living, and statements made to providers. *See* Tr. at 15-20. Against these complaints, the ALJ weighed the evidence relating to these alleged impairments, including examination findings, diagnostic tests, the conservative treatment she received for her conditions, and her own reports of daily activities and abilities. *Id.* Because the Plaintiff's subjective complaints were inconsistent with these specific elements of the record, the ALJ justifiably discounted them. Accordingly, the ALJ properly "g[a]ve some indication of the

13

evidence which he rejects and his reason(s) for discounting such evidence," and thus satisfied his obligation. *Burnett,* 220. F.3d at 121; *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining an ALJ is not required "to use particular language or adhere to a particular format," but only to "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review").

Moreover, even though consideration of each of the seven factors enumerated in 20 C.F.R. § 404.1529(c) is not required in every case, the ALJ here clearly examined and discussed those that were relevant. *See* S.S.R. 16-3p (explaining each factor will not necessarily be relevant or available in each case); *Jones*, 364 F.3d at 505 (requiring overall reasoning to be capable of meaningful review). For example, the ALJ considered Plaintiff's "daily activities" (§ 404.1529(c)(3)(i)) when noting her ability to prepare meals, perform some household chores, socialize with family and friends, and take care of her grandson. *See* Tr. at 17 (citing Ex. 3F, p. 5), 19 (citing Ex. 8F, p.2). The ALJ also addressed her medication's effects (§ 404.1529(c)(3)(iii)) as well as treatment other than medication ((§ 404.1529(c)(3)(iii)). *See, e.g.,* Tr. at 15, 19 (noting treatment records and self-reports showed effectiveness of medication when Plaintiff was compliant); *id.* at 17 (discussing treatment of plantar fasciitis, including that "claimant underwent an endoscopic gastrocnemius recession"). In sum, the ALJ adequately considered "other evidence" that was relevant to evaluation of Plaintiff's credibility and subjective complaints. § 404.1529; S.S.R. 16-3p.

Relatedly, to the extent Plaintiff attacks the sufficiency of the ALJ's "small statements scattered throughout the decision [that] were meant to justify" the ALJ's credibility assessment (such as findings concerning Plaintiff's medication regimen and daily activities), Pl. Br. at 28, that argument lacks merit. Pl. Br. at 28. For example, Plaintiff asserts that the ALJ erred by concluding that Plaintiff's mental health symptoms improved with treatment because, despite mental health

14

examinations noting Plaintiff's stable mood, "there were equally as many times where she reported worsened symptoms despite treatment." Pl. Br. at 30; *see* Tr. at 19 (noting improvements when Plaintiff "resumed medication compliance" and "exacerbation of her psychiatric symptoms" when she was "non-compliant"); *see also* Pl. Br at 28 (making similar arguments for ALJ's findings regarding Plaintiff's daily activities like preparing meals and housework). However, even assuming this is the case, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Kline v. Saul*, 2020 WL 6330001, at *20 (M.D. Pa., Sept. 14, 2020) ("The issue is not whether there is substantial evidence to support a contrary finding, but, instead, whether substantial evidence supports the Commissioner's finding.") (citing *Estep v. Richardson*, 459 F.2d 1015, 1016-17 (4th Cir. 1972)). Accordingly, this argument fails because it merely disagrees with the ALJ's supportable conclusions rather than highlights a lack of substantial evidence. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (explaining a reviewing court must affirm the ALJ's decision if supported by substantial evidence, even if it would have decided the case differently); *see also Daniels*, 2009 WL 1011587, at *2 (same).

### 3. The Sufficiency of the Record

Next, Plaintiff asserts that this matter must be remanded because the ALJ should have ordered a consultative psychological examination, in light of the fact that "the record was void of *any opinion* from *any medical sources*." Pl. Br. at 33 (emphasis in original). The Court disagrees.

As an initial matter, Plaintiff's argument ignores the fact that two state agency psychologists found that Plaintiff's mental limitations were non-severe. *See* Tr. at 19, 85-86, 91-92. Insofar as Plaintiff means the record lacked a medical opinion *as to her mental functional limitations* (since, having found her mental limitations non-serve, both state psychologists did not

15

opine as to specific functionality limitations), the SSA and controlling regulations make clear that the burden is always on the claimant to present evidence of her disability. 42 U.S.C. §§ 423(d)(5)(A) (incorporating by reference Section 423(d)(5)) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("you have to prove to us that you are . . . disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."); *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987). Although an ALJ has a duty to assist claimants in developing the record, he "is not required to act as claimant's counsel." *Conley v. Colvin*, No. 15-722, 2016 WL 3436435, at *10 (D. Del. June 20, 2016) (citing *Clark v. Shalala*, 28 F.3d 828 8th Cir. 1994). Indeed, where a claimant is represented—as was the case below and is the case now on appeal—the ALJ "is entitled to assume that a claimant represented by counsel is making h[er] strongest case for benefits." *Sergio R. v. Commr. of Soc. Sec.*, No. 21-10280, 2022 WL 2357453, at *7 (D.N.J. June 30, 2022) (internal quotation omitted). And here Plaintiff's attorney represented to the ALJ that the record was complete, when asked. *See* Tr. at 66 ("ALJ: To your knowledge, is the record complete? ATTY: It is, yes."). Under such circumstances, the ALJ was not affirmatively obligated to order further psychological examination. *See Maes v. Astrue,* 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation."); *see also Harrison v. Colvin*, 2014 WL 5148156, at *4 (W.D. Pa. Oct. 14, 2014) ("[A] case should generally not be remanded for further development of the record if a claimant's attorney affirmatively submits to the ALJ that the record is complete and the case is ripe for disposition.") (internal quotation omitted).

In any event, the regulations provide that an ALJ need not obtain additional evidence if the record is already sufficient to make a decision on a claim. *See, e.g.,* 20 C.F.R. §§ 404.1519a ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination on your claim"); 404.1517 ("we may ask you to have one or more physical or mental or physical examinations" if the evidence of record is insufficient to make a decision); 404.1520b(c) (providing that only if there is insufficient evidence to determine whether the claimant is disabled, the ALJ has discretion to "determine the best way to resolve the inconsistency or insufficiency."). And as discussed above, the ALJ justifiably found the record to support his findings concerning Plaintiff's mental health limitations. *See supra* IV.B.1. Accordingly, remand is not required to supplement the record.

### 4. The ALJ's Assessment of Plaintiff's Obesity

Turning to Plaintiff's challenge of the ALJ's consideration of Plaintiff's obesity, the Third Circuit has held that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In assessing the impact of claimant's obesity, the ALJ must discuss the evidence and explain his reasoning in a manner that would be "sufficient to enable meaningful judicial review." *Id.*

Here, the Court finds that the ALJ adequately considered the combined effects of Plaintiff's obesity with her other impairments throughout his analysis. Although Plaintiff did not allege disability due to obesity in her disability report, Tr. at 201, the ALJ nonetheless determined that Plaintiff's obesity was a severe impairment at step two of the sequential evaluation process. *See id.* at 14-15. When conducting the medical equivalency analysis at step three, the ALJ found that Plaintiff's impairments, either considered alone or in combination, did not equal the severity of an impairment in the Listings. *Id.* at 16 ("Although there is no specific medical listing for obesity,

17

obesity can complicate and aggravate existing physical and mental impairments, and can alone or in combination with other impairments medically equal a listing. However, in this case the undersigned has evaluated the claimant's obesity and has found that the functional effects of the claimant's obesity do not equal any medical listing."). Accordingly, this Court finds that the ALJ appropriately considered Plaintiff's obesity as part of the medical equivalency analysis at step three. *See Morris v. Comm'r of Soc. Sec.*, No. 19-cv-8472, 2020 WL 6580778, at *3 (D.N.J. Nov. 10, 2020) (finding an ALJ sufficiently considered obesity where the ALJ stated that he considered the combined effect of obesity with other severe impairments).

The ALJ further considered Plaintiff's obesity in constructing the RFC. In addition to his assessment of obesity at step three, the ALJ explained in the RFC portion of his decision that "[t]reatment records further reflect that the claimant was diagnosed with obesity," noting that the diagnosis was "corroborated by the claimant's body mass index of 32.3 in December 2019." Tr. at 18. Having considered "all symptoms" (including obesity), *id.* at 16, the ALJ specifically addressed Plaintiff's musculoskeletal impairments and limitations, the areas where obesity is most likely to compound. *See Jones v. Kijakazi*, No. 20-5733, 2022 WL 1658419, at *13 (E.D. Pa. May 25, 2022). Notably, however, the ALJ found full motor strength, full range of motion in her lower extremities, full range of motion in her spine, normal reflexes, normal joints without swelling or tenderness, and no other deficit. Tr. at 17-18. And as discussed above, Plaintiff's plantar fasciitis improved within six months following surgery and she had no further foot complaints or treatment until May 2020 (three years later) when her foot pain resolved with laser treatment within a period of months. *See id.; see also* 307, 312, 330, 332, 362, 365, 367, 369, 371, 374, 376, 387 (documenting foot diagnoses, treatments, and limitations). The ALJ's specific consideration of obesity in the context of these physical findings satisfied his obligation to "meaningfully consider the effect of a claimant's obesity." *Diaz*, 577 F.3d at 504; *see also Hoyman v. Colvin*, 606 F. App'x

18

678, 680 (3d Cir. 2015) ("Here, the ALJ explicitly contemplated [claimant's] obesity at the appropriate step . . .Accordingly, [claimant's] argument fails.").

Moreover, Plaintiff has not explained how further consideration of obesity would influence the ALJ's analysis. Plaintiff has not pointed to any evidence in the record indicating that obesity impacted her impairments such that the medical equivalency analysis would change or that she required additional RFC limitations due to her obesity. Further, Plaintiff does not list obesity in her disability report (Tr. at 201), and she did not testify regarding obesity at either hearing before the ALJ (Tr. at 28-61, 62-81). Mere speculation that obesity combined with other impairments necessitates more significant RFC limitations is insufficient to overturn the ALJ's analysis. *See Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021) (a "generalized response" that obesity would affect another impairment is insufficient); *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (claimant must establish not just that "obesity can impair one's ability to perform basic work activities," but must also "specify[] how her obesity . . . affected her ability to perform basic work activities."). Accordingly, without explaining how obesity impacts her ability to work or identifying medical evidence in the record regarding her condition, further analysis of Plaintiff's obesity would not change the ALJ's conclusion, and remand is not warranted. *Rutherford*, 399 F.3d at 552–53 (3d Cir. 2005); *see also Neff v. Astrue*, 875 F. Supp. 2d 411, 423 (D. Del. 2012) ("The Court cannot remand the ALJ's decision based on the failure to confront evidence that does not exist."). Therefore, the ALJ meaningfully considered Plaintiff's obesity and supported his determinations with substantial evidence. *Diaz*, 577 F.3d at 504.

### V. CONCLUSION

For the reasons above, the ALJ's decision is affirmed. An appropriate Order will follow.

**DATE:** March 22, 2023

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

20